BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366*
emdrake@bm.net
Joseph C. Hashmall, MN Bar No. 392610*
jhashmall@bm.net
43 S.E. Main Street, Suite 505
Minneapolis, MN 55402
Phone: (612) 594-5999
Fax: (612) 584-4470
*admitted pro hac vice

NICHOLS KASTER, LLP
Matthew C. Helland (SBN 250451)
helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

*Attorneys for Plaintiffs and proposed Class Members*
[Additional Attorneys for Plaintiffs and Proposed Class
Members on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| PETER LEE and LATONYA CAMPBELL, individually, on behalf of other similarly situated individuals, and on behalf of the general public,<br><br>    Plaintiffs,<br><br>      v.<br><br>THE HERTZ CORPORATION, DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., and DOES 1-20, inclusive,<br><br>    Defendants. | Case No.:5:15-cv-4562-BLF<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**Date:    November 17, 2016**<br>**Time:    9:00 a.m.**<br>**Location: Courtroom 3, 5th Floor**<br>          **280 S. 1st Street, San Jose**<br>**Judge:   Hon. Beth Labson Freeman**<br><br>Action Filed:  August 21, 2015<br>Trial Date:  May 31, 2017 |

# **INTRODUCTION**

Background reports used for employment purposes can have life-altering consequences. Congress passed the provisions of the Fair Credit Reporting Act ("FCRA") at issue in this case in order to ensure that consumers receive clear disclosures before giving written consent for a prospective employer to obtain a background report. Congress also required that consumers be allowed to review their reports, and be given a reasonable period of time to discuss or correct those reports, prior to having adverse action taken against them based on those reports.

Congress's stated goals in enacting the disclosure and authorization provisions of the FCRA were to protect consumer privacy and to empower consumers with information so that they can maintain control over their own lives. Congress made it illegal for employers to obtain background reports without first making a conspicuous, stand-alone disclosure that a report would be procured and without thereafter obtaining the consumer's written authorization. This Court has already held that the plaintiff in a related case has successfully alleged that Hertz willfully broke the law by procuring reports on him without first providing him with the required disclosure. *Case v. Hertz*, No. 5:15-cv-02707, ECF No. 64. Hertz's conduct caused Plaintiffs to suffer two kinds of concrete injury. First, Hertz invaded Plaintiffs' privacy by procuring reports on them without obtaining their informed consent to do so. Second, Hertz caused Plaintiffs informational injuries. Hertz deprived Plaintiffs of information that Congress required to be provided in a certain way, at a certain time—namely, a clear and conspicuous disclosure that a consumer report was going to be procured, plus a copy of the report and summary of rights, *before* being subject to adverse action based on the contents of the report. The purpose of the stand-alone disclosure is to allow consumers to give informed consent for the report's procurement. The purpose of the pre-adverse action notice is to provide consumers with the opportunity to review and explain their reports prior to having adverse action taken against them, and to inform them of their rights under the FCRA. Hertz's conduct deprived Plaintiffs of information Congress determined they had a right to receive at a particular time. Based on these concrete injuries, this Court has jurisdiction.

*Spokeo* made no change to the requirements of standing and explicitly reaffirmed decades

of precedent. *Spokeo* did not even apply standing principles to the facts before it, instead remanding the case to the Ninth Circuit, whose previous analysis it found to be "incomplete" because it had "overlooked" concreteness. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016). Federal courts have been adjudicating claims like those Plaintiffs assert here for years—both in the specific context of §§ 1681b(b)(2) and 1681b(b)(3), but also in the broader context of other statutes requiring specific disclosures. There is bountiful precedent supporting federal courts' authority to hear these kinds of improper disclosure claims and informational injury claims, including circuit-level precedent post-*Spokeo*. Contrary to Hertz's argument, there is no requirement that claims of informational injury be related to the government's failure to make disclosures related to the political process. Informational injury is cognizable even in the context of private parties failing to make required disclosures that have nothing to do with the political process. *See, e.g. Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) (tester who fully expected to receive misleading information had Article III standing to sue based on failure of private landlord to make required disclosures); *Alvarez v. Longboy*, 697 F.2d 1333 (9th Cir. 1983) (farmworkers had Article III standing based on private employer's failure to make written disclosures required by statute); *Church v. Accretive Health* No. 15-15708, ___ F. App'x ____, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding, post-*Spokeo*, that plaintiffs had Article III standing for informational injury due to private party's failure to make disclosures required by the Fair Debt Collection Practices Act ("FDCPA").)

Far from licensing a foray into whether the rights asserted are sufficiently "basic" to warrant the exercise of federal jurisdiction, *Spokeo*, and the established line of Supreme Court precedent that came before it and upon which it relied, mandate that this Court determine whether the injuries alleged by Plaintiffs are among those which Congress identified and sought to prevent through the passage of the statute at issue. In making this decision, *Spokeo* instructs that the Court may look to the common law to see whether the injuries alleged also have common law roots.

Standing is supported here by both Congress's explicit judgment and the fact that Plaintiffs' claims have strong common law analogs—invasion of privacy and the enforcement of disclosure

requirements applied to important relationships. For this reason, the court that has conducted the most meticulous and thorough analysis of a plaintiff's standing to pursue claims based on failing to receive the stand-alone disclosure and pre-adverse action notice required by the FCRA recently concluded, in light of both Congressional judgment and historical precedent, that the plaintiff clearly had Article III standing to pursue his claims in federal court. *Thomas v. FTS USA, LLC*, No. 3:13-cv-825, 2016 WL 3653878 (E.D. Va. June 30, 2016). In so holding, the court found that FCRA protections at issue in this case are "clearly substantive, and neither technical nor procedural." *Id.* at *7. This Court should follow *Thomas* and deny Hertz's motion.

Additionally, because this case was originally filed in state court, if this Court finds jurisdiction lacking, it must remand to state court, not dismiss. 28 U.S.C. § 1447(c). For all of these reasons, Hertz's motion should be denied.

**STATEMENT OF FACTS**

### 1. <u>Hertz Failed to Provide Plaintiffs with a Stand-Alone Disclosure of Its Intent to Procure Their Consumer Reports.</u>

Plaintiffs Peter Lee and Latonya Campbell applied for employment at Hertz in May and June 2014, respectively. Plaintiffs' First Amended Complaint ("FAC") ¶¶ 30-32, 59. During the processing of their applications, Hertz obtained one or more consumer reports on them. FAC ¶¶ 45, 70. Plaintiffs pled in the FAC that Hertz failed to provide Plaintiffs with a "clear and conspicuous disclosure in the form of a written document that consisted *solely* of the disclosure, that it may obtain a consumer report for employment purposes, before it caused the procurement of a consumer report on [Plaintiffs], as required by 15 U.S.C. § 1681b(b)(2)(A)(i)." FAC ¶¶ 46, 71. The disclosure violated the FCRA because it was not made in a separate document, and "[n]umerous pieces of extraneous information, including a statement purporting to release from liability Hertz and other entities involved in the background check process, appeared with the disclosure in the online application." *Id.* ¶¶ 35-36, 61-62.

### 2. <u>Hertz Failed to Provide Plaintiffs with a Copy of Their Consumer Reports and a Summary of Rights Prior to Taking Adverse Action Against Plaintiffs</u>.

After giving Plaintiffs conditional offers of employment, Hertz rescinded Plaintiffs' offers based on information in their consumer reports without first providing Plaintiffs with a copy of their consumer reports and a summary of their rights under the FCRA. *Id.* ¶¶ 32, 47-56, 66, 73-79. Plaintiffs pled that they were "denied the opportunity the FCRA guaranteed to [them], namely to review [their] report[s] and a summary of rights prior to adverse action being taken against [them]." *Id.* ¶¶ 57, 79. Under the FCRA, Plaintiffs were "supposed to have a reasonable period of time after being provided with the report and summary of rights to explain the circumstances regarding the criminal charges and their lack of relevance to their job application, and Hertz's illegal conduct denied [them] that opportunity." *Id.* ¶¶ 57, 79.

> *a.* **Hertz failed to provide Mr. Lee with a copy of his consumer report and a summary of his rights prior to rescinding his job offer.**

Hertz recruited Mr. Lee for employment as a counter sales representative in May 2014. *Id.* ¶ 30. At that time, Mr. Lee worked for a competitor car rental company in a similar position. *Id.* ¶ 31. After an interview, Hertz offered Mr. Lee employment pending the processing of his application materials. *Id.* ¶ 32. On May 15, 2014, a Hertz field recruiter, Kimberly Kowallis, emailed Mr. Lee confirmation of his conditional offer of employment. *Id.* ¶ 38. Ms. Kowallis scheduled Mr. Lee to start working for Hertz on June 9, 2014. *Id.* ¶ 44. In reliance on the offer, Mr. Lee notified his then-current employer of his resignation, effective June 9, 2014. *Id.*

On June 3, 2014, Ms. Kowallis rescinded Mr. Lee's job offer. *Id.* ¶ 47. She informed Mr. Lee that Hertz could not hire him based on "Hertz policy" because of criminal history information contained in his background check. *Id.* As Mr. Lee had not received a copy of the background check Hertz procured or been apprised of what it contained, he asked Ms. Kowallis for a copy of the report. *Id.* ¶ 48. Ms. Kowallis instructed him to contact Sterling Infosystems, Inc. ("Sterling"), the agency from which Hertz obtained Mr. Lee's background report. *Id.* Later that day, Mr. Lee received an email from Ms. Kowallis confirming that Hertz rescinded his job offer because he did not meet the company's "background qualifications." *Id.* ¶ 49.

At Mr. Lee's request, Sterling later sent him a copy of the report that it had provided to

Hertz, which Mr. Lee received after June 3, 2014. *Id.* ¶ 52. The report included pending criminal charges for which he had not been convicted. *Id.* ¶ 45. The pending charges were not relevant to the sales representative position considering the circumstances of the arrest, the nature of the crimes charged, and the fact that Mr. Lee had not been convicted of any crime. *Id.* ¶ 58. On or after June 4, 2014, Sterling sent Mr. Lee an undated letter, inaccurately entitled "Pre-Adverse Action Notice," with a copy of a consumer report prepared by Sterling dated June 4, 2014. *Id.* ¶ 53.

Plaintiffs pled in the FAC that, by the time that Sterling mailed Mr. Lee the report and the June 4 letter, Hertz had already revoked Mr. Lee's offer of employment based upon information contained in his report. *Id.* ¶ 56. Hertz's actions deprived Mr. Lee of his FCRA right to have an opportunity to review the information contained in his background report and to respond prior to suffering an adverse action. *Id.* ¶ 57. They also deprived him of the ability to be informed of all his rights under the FCRA prior to suffering an adverse action. *Id.*

### b. Hertz failed to provide Ms. Campbell a copy of her consumer report and a summary of her rights prior to taking adverse action against her.

Ms. Campbell completed an online application for employment as a sales representative at Hertz in the last week of April 2014. *Id.* ¶ 59. After Ms. Campbell interviewed with a regional manager, Ms. Kowallis called Ms. Campbell on or about May 19, 2014 and gave her a conditional offer of employment. *Id.* ¶¶ 64, 66. That day, Ms. Kowallis sent Ms. Campbell an email confirming the offer. *Id.* ¶ 66. Around that same time, Ms. Campbell declined a second interview with another company. *Id.* ¶ 67. On or about June 2, 2014, Ms. Kowallis asked Ms. Campbell to start work at Hertz on June 9, 2014 and sent Ms. Campbell an email with a "1st day paperwork" appointment reminder for June 9, 2014. *Id.* ¶ 72.

Thereafter, before June 4, 2014, Ms. Kowallis called and told Ms. Campbell that the legal department had been made aware of Ms. Campbell's criminal history and that Hertz does not hire people with criminal convictions involving violence. *Id.* ¶ 73. Ms. Campbell responded that she had been the victim of domestic violence prior to, and at the time of, her misdemeanor conviction. *Id.* ¶ 74. Ms. Kowallis told Ms. Campbell to send her evidence of Ms. Campbell's status as a

domestic violence victim. *Id.* On or around June 4, 2014, Ms. Campbell obtained and sent to Hertz two letters confirming that Ms. Campbell was a victim of domestic violence. *Id.* ¶ 75.

On or about June 6, 2014, Ms. Kowallis cancelled the "1st day paperwork" appointment reminder, and, on or about June 10, 2014, Ms. Kowallis called to rescind Ms. Campbell's job offer. *Id.* ¶ 76, 77. When Ms. Campbell asked why, Ms. Kowallis responded that it was against Hertz's policy to hire anyone on probation. *Id.* ¶ 77. Ms. Kowallis had not previously mentioned any policy or practice that Hertz had with respect to not hiring people on probation. *Id.* ¶ 73. On June 10, 2014, Ms. Kowallis sent Ms. Campbell an email, stating that Hertz could not hire Ms. Campbell based on her probation status. *Id.* ¶ 78. The misdemeanor and Ms. Campbell's status on probation were not relevant to the sales position for which she applied given the nature and circumstances of the misdemeanor and probation. *Id.* ¶ 80. Had Hertz informed Ms. Campbell that her probation status prevented Hertz from hiring her, Ms. Campbell could have sought to terminate her probation, as her probation officer had stated her intent to attempt to do so based on Ms. Campbell's excellent progress on probation. *Id.* ¶ 75.

After Hertz rescinded her job offer, Ms. Campbell received a package, including a copy of the consumer report Hertz procured on her, in the mail. *Id.* ¶ 79. Plaintiffs pled that Hertz's actions deprived Ms. Campbell of her right to have the opportunity to review the information contained in her background report as well as a summary of her FCRA rights before suffering an adverse employment action. *Id.* ¶ 81.

3. **Plaintiffs Pled That Hertz Harmed Them by Invading Their Privacy, Causing them Informational Injury, and Denying Them the Opportunity to Review Their Background Reports and Respond Prior to Suffering An Adverse Action.**

Hertz's actions harmed Plaintiffs in two concrete ways. Hertz's violation of the FCRA invaded Plaintiffs and Class Members' privacy and caused them informational injury. *Id.* ¶¶ 94-95. As to privacy and one form of informational injury, Hertz obtained Plaintiffs' reports when it had no legal right to do so, as it had not provided Plaintiffs with required disclosures prior to obtaining their reports. Further, by failing to provide Plaintiffs with notice and a copy of their background reports before rescinding their job offers, Hertz deprived Plaintiffs the ability to be

informed "about their statutory rights under the FCRA" and to review "the accuracy of the information reported about them that Hertz used in taking adverse employment actions." *Id.* ¶ 96. Plaintiffs were also denied the opportunity to be confronted with the contents of the reports that were being used against them, and to tell their story prior to suffering an adverse employment action. *Id.* As a result, Plaintiffs were refused jobs that they were otherwise qualified to perform, and for which they resigned employment and/or passed up other job opportunities in order to accept. *Id.* ¶¶ 44, 58, 67, 80.

## STANDARD OF REVIEW

The party asserting federal jurisdiction has the burden of establishing that jurisdiction exists. *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1166 (N.D. Cal. 2015). Jurisdiction may be established "by putting forth the manner and degree of evidence required by whatever stage of the litigation the case has reached." *Id.* (quotation omitted). At this stage, standing is demonstrated through allegations of facts plausibly explaining why the standing requirements are met. *Barnum Timber Co. v. Envtl. Prot. Agency,* 633 F.3d 894, 899 (9th Cir. 2011).

## ARGUMENT

### 1. *Spokeo* Did Not Change The Requirements For Article III Standing.

To have standing to bring a claim in federal court, the plaintiff must first have suffered an injury in fact. This requirement has two components: the injury must be both (1) particularized, and (2) concrete. Hertz does not contest that the injuries suffered by Plaintiffs are sufficiently "particularized." Nor does Hertz contend that Plaintiffs fail to satisfy the other tests required for standing. Instead, Hertz argues that Plaintiffs have not suffered a "concrete" injury.

Alleging a concrete injury is not a Herculean task. On this topic, the Court in *Spokeo* distilled several "general principles" from its prior cases, without either going beyond or disavowing them. *Spokeo*, 136 S. Ct. at 1550. First, it acknowledged that, although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id.* at 1549-50. Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and

the judgment of Congress play important roles." *Id.* at 1549. So if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff has suffered a concrete injury. *Id.*; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).

But the plaintiff need not always present a common-law analogue to establish a concrete injury because the Court also reaffirmed that Congress has the power (and is "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." *Spokeo*, 136 S. Ct. at 1549. Accordingly, the third principle emphasized in *Spokeo* is that Congress can elevate a violation of procedural rights to a concrete injury if the rights at issue protect against an identified harm. A "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right "without meeting all the normal standards for redressability and immediacy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992).

Critically, none of these principles are new. *Spokeo* did not change the law. *See Thomas*, 2016 WL 3653878, at *4 ("Contrary to Defendants' position, *Spokeo* did not change the basic requirements of standing."); *Mey v. Got Warranty Inc.,* 5:15-CV-101, 2016 WL 3645195, at *2 (N.D. W. Va. June 30, 2016) ("*Spokeo* appears to have broken no new ground."); *see also* Amy Howe, Opinion analysis: Case on standing and concrete harm returns to the Ninth Circuit, at least for now, SCOTUSblog (May 16, 2016), http://bit.ly/1TB3vd1 (describing *Spokeo* as a "narrow" decision); Daniel J. Solove, Spokeo, Inc. v. Robins: When Is a Person Harmed by a Privacy Violation?, Geo. Wash. L. Rev. On the Docket (May 19, 2016), http://bit.ly/20fyAmS.

     2.   **Plaintiffs Suffered Concrete Injuries Sufficient to Confer Standing After *Spokeo*.**

        a.    **The FCRA Creates Substantive Rights.**

Hertz's motion is premised on the idea that Plaintiffs have only alleged "a bare procedural violation." Def.'s Br. at 8. But repeatedly characterizing a legal violation as a "bare procedural

violation" is not a talisman against federal jurisdiction. The provision at issue here is substantive in nature—it dictates that a certain kind of information be provided at a specific time. Absent the provision of that information, and the consumer's subsequent written informed consent, the employer may not access private information on the consumer. The statute thus confers two substantive rights—the right to receive a certain kind of information, and the right to privacy in one's consumer report. That the provisions at issue in this case are substantive and not procedural was recently affirmed in *Thomas*. In a thorough and lengthy opinion which meticulously evaluated *Spokeo* and the text and legislative history of the FCRA, the court found:

> § 1681b(b)(2) establishes two rights. First, it establishes a right to specific information in the form of a clear and conspicuous disclosure. The statutory requirement that the disclosure be made in "a document that consists solely of the disclosure" helps to implement the textual command that the disclosure be clear and conspicuous. Second, § 1681b(b)(2) establishes a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances. *Those protections are clearly substantive, and neither technical nor procedural.*

2016 WL 3653878, at *7 (emphasis added). The court went on to conclude that plaintiff had alleged two concrete injuries stemming from the failure to provide a stand-alone disclosure under 15 U.S.C. § 1681b(b)(2)—deprivation of information and invasion of privacy. *Id*. at *8-11. These injuries were sufficient to confer standing under Article III, and the court therefore denied a motion to dismiss for lack of subject-matter jurisdiction.

### b.  **Hertz Invaded Plaintiffs' Privacy.**

Congress enacted the FCRA in 1970 to protect the "consumer's right to privacy" by ensuring "the confidentiality, accuracy, relevancy, and proper utilization" of consumer information. 15 U.S.C. § 1681(b). Employment background checks contain a wealth of information traditionally recognized as private—dates of birth, social security numbers, detailed address history, and information from a variety of jurisdictions and sources about criminal background and driving history. That some of this information comes from public sources is of no moment—the act of consolidating it and providing it to a potential employer implicates privacy concerns. *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *5-6 (N.D. Cal. July

26, 2016) (Alsup, J.) (finding standing based on invasion of privacy when consumer reporting agency reported information it was prohibited from reporting, notwithstanding the fact that the information was publicly available). Indeed, the Supreme Court has explicitly rejected Hertz's claim that information which is publicly available does not implicate privacy interests. *See* Def's Br. at 12. The Supreme Court addressed this precise issue in *U.S. Dept. of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 764 (1989) when it held that privacy interests forbade the release of a "rap sheet" because even though the information contained therein was publicly available, it was available only in bits and pieces from a variety of disparate sources, and the party had a privacy interest in preventing the dissemination of the compiled information.

Background reports are sold in an impersonal marketplace by gigantic and often anonymous corporations who have no relationship with the people whose data they are selling. In such a circumstance, privacy interests are clearly implicated. As the Ninth Circuit put it, consumer reporting agencies ("CRAs") "traffic[] in the reputations of ordinary people." *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008). A prime motivation for the FCRA was the impact of third-party data collection on the employment market and on individual job seekers. When it passed the FCRA, Congress voiced a "concern[]" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper invasion of privacy." S. Rep. No. 104-185, at 35 (1995). The FCRA "sought to protect the privacy interests of . . . potential employees by narrowly defining the proper usage of these reports and placing strict disclosure requirements on employers." *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004), *aff'd*, 135 F. App'x 499 (3d Cir. 2005); *see also id*. at 436.

The FCRA's employment-specific provisions go beyond the general privacy protections of the Act—requiring employers to demonstrate a permissible purpose, provide a stand-alone disclosure form, and gain informed written consent from the consumer. These provisions demonstrate that Congress intended to allow consumers to make an informed choice whether employers could view their reports. As one legislator explained, the FCRA's protections represented "new safeguards to protect the privacy of employees and job applicants"; the Act as a

whole, he continued, was "an important step to restore employee privacy rights." 140 Cong. Rec. H9797-05 (1994) (Statement of Congressman Vento); *see also* 138 Cong. Rec. H9370-03 (1992) (Statement of Congressman Wylie) (the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and privacy protections"). In addition to the risk of privacy-related harm, Congress also "found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment"—often without consumers' knowledge. *Id.*; *see* S. Rep. No. 91-157, at 3–4 (1969).

The disclosure requirement at issue here is contained in § 1681b, titled "Permissible Purposes of Consumer Reports." Section 1681b(b)(2) requires employers to disclose to job seekers that "a consumer report may be obtained for employment purposes." After providing such a disclosure, employers must also obtain informed written consent from the consumer before procuring his or her consumer report. To ensure that prospective employees are informed about what they are consenting to, the FCRA requires that the disclosure be "clear and conspicuous" and be provided "in a document that consists solely of the disclosure." *Id.* § 1681b(b)(2)(A). Absent the job seeker's informed consent, it is illegal for a company to obtain a job applicant's consumer report for employment purposes—a point Congress hammered home by criminalizing the acquisition of a consumer report under false pretenses. 15 U.S.C. § 1681q; *see also Thomas*, slip op. at 23 (§ 1681b(b)(2) creates two rights: "first, a legally cognizable right to receive a disclosure that is clear, conspicuous, and unencumbered by extraneous information; and second, a right to the privacy of one's personal information, which an employer may not invade without first providing the above information and obtaining the consumer's express written consent.").

Framed in the language of the common law, an employer that buys a background report without a legal basis to do so has invaded the individual's privacy. "[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the disclosure and authorization requirements. 15 U.S.C. § 1681b(b)(2)(A). "The FCRA makes it unlawful to 'procure' a report without first providing the

proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).

Absent compliance with the FCRA, an employer has no right to obtain a consumer's private information. Accordingly, obtaining that information in violation of the FCRA is an invasion of privacy. Invasion of privacy is a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and thus is a cognizable injury for standing purposes. *Spokeo*, 136 S. Ct. at 1549. For more than a century, American courts have recognized that "[o]ne who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other." Restatement (Second) of Torts § 652A (1977); *see id.* cmt. a (noting that "the existence of a right of privacy is now recognized in the great majority of the American jurisdictions"). In his seminal 1890 article, Justice Brandeis explained that "what is ordinarily termed the common-law right to intellectual and artistic property are . . . but instances and applications of a general right to privacy." Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 198 (1890). American courts at the turn of the century identified the right of privacy as "derived from natural law." *Pavesich v. New England Life Ins. Co.*, 50 S.E. 68, 70 (Ga. 1905). Harm to an individual's privacy has been regarded as a basis for suit.

Hertz spends much time explaining that Plaintiffs' claims in this case are not precisely contiguous with the common law tort of invitation of privacy, Def's Br. at 12-13, but *Spokeo* does not require precise continuity. *Spokeo*, 136 S. Ct. at 1549 (standing can exist for claims with "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"); *Perrill v. Equifax*, 14-cv-00612, ECF No. 116 at 6-7 (Aug. 31, 2016) (finding standing to assert FCRA clam because, *inter alia*, claim was "similar to" common-law invasion of privacy). Even if Plaintiffs' claims were not precisely cognizable at common law, the Supreme Court explained in *Spokeo* that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 578). Here, Congress recognized that employers' procurement of consumer reports without adequate disclosure harmed individuals' privacy interests. Congress's

enactment of the FCRA is its adjustment of the boundaries of the common-law right to privacy to account for changing marketplaces, such as the advent of CRAs whose function is to sell reports about job applicants to employers. Just as Plaintiffs would have had certain privacy rights at common law, through the enactment of the FCRA, Congress codified rights in the specific context of CRAs selling reports for employment purposes. Plaintiffs have pled that Hertz unlawfully obtained reports on them in a manner that disregarded the bounds of privacy established by Congress. Plaintiffs have therefore pled a privacy injury that is sufficiently concrete. Numerous courts have found Article III standing post-*Spokeo* in analogous circumstances.[1]

The FCRA's disclosure requirement is substantive in nature, and a plaintiff alleging his rights have been violated need not allege more consequential harm. The *Thomas* court characterizes the disclosure requirement as "clearly substantive":

> In these situations, legal rights reflect social judgments about where harm has and has not occurred. Often, these kinds of injuries exist where we think the harm is in the act itself. The public disclosure of private information or defamatory falsehoods does not need downstream consequences to be hurtful; neither does differential treatment on the basis of race. Procedural wrongs are an oft-seen category where the distinction between the legal violation and the injury may be so thin as to be essentially nonexistent. Proving the injury in many of these cases just entails proving the violation itself. . . . As a result, requiring some sort of additional indicia of harm beyond the violation itself ignores the nature of the injury and the reason for the remedy.

*Thomas*, slip op. at 15 (quoting *Who Should Define Injuries For Article III Standing?*, 68 STAN L. REV. ONLINE 76, 80-81 (2015)). Hertz repeatedly argues that Plaintiffs must demonstrate

---

[1] *See Hawkins* at *6 (finding standing where defendant published public record information older than that allowed by the FCRA based upon plaintiff's statutorily established privacy interest in outdated information); *Perrill*, 14-cv-00612, ECF No. 116; *Boelter v. Hearst Commc'ns, Inc.*, --- F. Supp. 3d ---, 2016 WL 3369541, at *3 (S.D.N.Y. June 17, 2016) (plaintiffs suffered a concrete injury in fact when defendant sold plaintiffs' information to third parties in violation of the Video Privacy Protection Act); *Johnson v. Navient Sols., Inc.*, --- F. Supp. 3d ---, 2015 WL 8784150, at *2 (S.D. Ind. Dec. 15, 2015) (finding standing based on a violation of the plaintiff's statutory right to privacy created by the Telephone Consumer Protection Act); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-cv-00751, 2016 WL 3543699, at *8 (S.D. Cal. June 29, 2016) (invasion of privacy was concrete injury under California wiretap law); *Potocnik v. Carlson*, 0:13-cv-02093, ECF No. 198 (D. Minn. July 15, 2016) (plaintiff had standing to challenge unauthorized access to plaintiff's driver's license record).

consequential harm, like the job loss, in order to have standing. However, as the Third Circuit stated in its first post-*Spokeo* opinion, "when it comes to laws that protect privacy, a focus on economic loss is misplaced." *In re: Nickelodeon Consumer Privacy Litigation*, No. 15-1441, slip op. at 21 (June 27, 2016). The court found that plaintiffs who alleged that a third party had disclosed information Congress deemed private had standing, despite lack of consequential harm:

> While perhaps "intangible," the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," *Google* noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private. Accordingly, we conclude that the plaintiffs have alleged facts which, if true, are sufficient to establish Article III standing.

*Id.* at 25 (citing *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015)). The legislative history of § 1681b(b)(2) of the FCRA clearly demonstrates that Congress sought to protect consumer privacy by requiring consumers to be clearly informed that an employer would procure a consumer report on them, and to provide written consent thereto. Hertz's violation of this carefully balanced statutory framework invaded Plaintiffs' privacy, concretely injured them, and conferred Article III jurisdiction on this Court.

c. **Hertz Caused Plaintiffs Informational Injury.**

Plaintiffs have also alleged that Hertz deprived Plaintiffs of information they were entitled to receive. *Spokeo* explicitly embraced informational injuries as the kinds of injuries which are sufficient to confer standing "without more." *Spokeo*, 136 S. Ct. at 1550. Noting that the "plaintiff need not allege any additional harm beyond the one which Congress has identified," the Court cited two cases which held that statutory violations, without more, constituted injury in fact: *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) and *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989). *Spokeo*, 136 S. Ct. at 1549. In both cases, the Court rejected the idea that plaintiffs who were deprived of information they were entitled to receive had to demonstrate an additional injury. Instead, the deprivation of information itself sufficed to constitute the required injury.

In *Public Citizen*, non-profit groups sued for access to records related to the American Bar

Association's ("ABA") participation in the federal judicial nomination process, arguing that the ABA's involvement in that process brought it under the ambit of the disclosure requirements of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. § APP. 2 § 1, *et seq.* In addition to disputing the merits, the ABA challenged the groups' standing. The ABA argued that the plaintiffs had not "alleged injury sufficiently concrete and specific to confer standing." 491 U.S. at 448. The Supreme Court soundly rejected that argument, holding that "refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449. Importantly, the Court did not require the plaintiffs to demonstrate some additional injury beyond not being able to access the information to which they had a right. Plaintiffs were not required to show they lost money, or faced the risk of any other consequence as a result of not having the information to which they were entitled. Instead, the injury was coterminous with the violation of the statutory right. The injury the Court identified was not being able to access the information "to the extent the [law] allows." *Id. Akins* entailed the same analysis. In that case, the Court held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." 524 U.S. at 11, 21 (citing *Public Citizen*).

Importantly, and contrary to Hertz's argument, neither *Public Citizen* nor *Akins* turned on whether the rights at issue were related to the "basic" right to vote. Nor did they stem from the fact that the entity that failed to make the disclosures was governmental in nature. Instructive on this point is *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). *Havens* involved "testers" applying for private housing they had no intention of ever living in for the purpose of determining whether the defendant-realtor would provide legally required disclosures. The Court described the tester as having no "intention of buying or renting a home" and said that he "fully expect[ed] that he would receive false information," *id.* at 373-374. In other words, the tester suffered no tangible injury. Nonetheless, the Court held that "[a] tester who has been the object of a misrepresentation made unlawful under [the statute] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id.*

In *Akins*, *Public Citizen* and *Havens*, plaintiffs had standing despite that they (1) had suffered no monetary damages or other consequential harm, and (2) would not have had any entitlement to the information at issue absent Congress creating that entitlement by statute. So too here. *Havens*, 455 U.S. at 373; *see also Spokeo*, 136 S. Ct. at 1549 (noting that "a plaintiff in [certain] case[s] need not allege any additional harm beyond the one Congress has identified" in the statute). The Eleventh Circuit recently confirmed that informational injury confers Article III standing post-*Spokeo*. In *Church v. Accretive Health, Inc.*, No. 15-15708, ___ F. App'x ____, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) the plaintiff alleged that the defendant had failed to provide proper disclosures under the FDCPA. *Id.* In finding that the plaintiff had standing under Article III, the Eleventh Circuit noted that "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Id.* The court further found that *Spokeo*'s "bare procedural violation" language did not apply to the claim at hand because "Congress provided Church with a substantive right to receive certain disclosures and Church has alleged that Accretive Health violated that substantive right." *Id.* at *3 n. 2. The court concluded that Church had standing because she "has sufficiently alleged that she has sustained a concrete—*i.e.*, 'real'— injury because she did not receive the allegedly required disclosures. The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled." *Id.* at *3. Importantly, the Court emphasized that "[w]hile this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete." *Id.* at *3. Other post-*Spokeo* decisions have confirmed this logic. *See, e.g. Altman v. White House Black Mkt., Inc.*, No. 1:15-CV-2451-SCJ, 2016 WL 3946780, at *4 (N.D. Ga. July 13, 2016) (citing *Thomas* and *Church* and finding that plaintiff had standing where defendant violated plaintiff's substantive statutory right to receive a truncated credit card receipt). This conclusion is well in line with pre-

existing circuit court logic, including that of the Ninth Circuit.[2] *Spokeo* does nothing to undermine the conclusions of these circuit courts. In fact, by citing *Public Citizen* and *Akins* with approval, and for the explicit proposition that statutory injuries can confer Article III standing, the Supreme Court reinforced these cases.

Hertz notes that, in considering its motion to stay the *Case* matter, this Court noted that *Akins* arose from a considerably different factual background than this case. Def's Br at 14-15. The Court, however, made that observation before *Spokeo* had been decided; this Court correctly noted that *Spokeo* was more factually similar to this case than *Akins* is, and that *Spokeo* may, therefore, have been dispositive of this case. *Id*. However, *Spokeo* has now been decided, and the Supreme Court made no substantive changes to the law of standing. Instead, the Court cited *Akins* with approval for the proposition that some statutory causes of action require no further harm than the one Congress has identified. *Spokeo*, 136 S. Ct. at 1549. Therefore, the holding of *Akins*, that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute" remains good law, and is controlling in this case. 524 U.S. at 11, 21 (citing *Public Citizen*).

The court must not accept Hertz's invitation to engage in an analysis of whether the rights protected by Congress are sufficiently "basic" to warrant the exercise of jurisdiction. To do so would turn Article III on its head. The fundamental purpose of Article III is to ensure the separation of powers—to prevent courts from changing the law by deciding fundamentally political questions. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) ("The law of Article III standing,

---

[2] *See, e.g.*, *Alvarez*, 697 F.2d at 1338 (workers achieved standing by alleging they had been deprived of a written disclosure they were entitled to receive); *see also Heartwood, Inc. v. U.S. Forest Serv.*, 230 F.3d 947, 952 n.5 (7th Cir. 2000); *Doe v. Pub. Citizen,* 749 F.3d 246, 263 (4th Cir. 2014); *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 823 (8th Cir. 2013) (informational injury created standing to pursue statutory damages claim under Electronic Funds Transfer Act, even without economic injury, where ATM was missing required disclosure); *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003); *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 429 (5th Cir. 2013); *Byrd v. U.S. E.P.A.*, 174 F.3d 239, 243 (D.C. Cir. 1999); *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 693 (9th Cir. 2007), *aff'd in part, rev'd in part sub nom. Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009).

which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches") (quotation omitted). Article III stands for the principle of judicial restraint in the face of an exercise of power by the other branches of government. *Id.* Yet, judicial restraint is the antithesis of what Hertz would have this Court exercise. Rather, Hertz seeks to have this Court declare that it lacks jurisdiction in this case because the rights Congress established, and conferred upon Plaintiffs, are not sufficiently important (in Hertz's parlance, "basic") to warrant enforcement in federal court. But whether a right is "basic" or "important" or "fundamental" is a decidedly political question—not a judicial one. *Spokeo* reaffirmed this principle by emphasizing that Congress maintains the power to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)). Once Congress has identified and codified a harm, no further analysis of the relative importance, or "basicness" of that harm is allowed.

Hertz also seeks to convince the Court that Hertz should get a free pass because its document indicated it would procure a consumer report and because Plaintiffs signed the bottom of the document. Hertz claims, "Although Plaintiffs' FAC asserts that the ***form*** of the Application Disclosure and Sterling Disclosure failed to comply with technical requirements of the FCRA, it is beyond dispute that the ***contents*** of those documents advised Plaintiff a background check would be procured, and each document contained Plaintiff's written authorization to proceed." Def's Br. at 7. This argument, however, is fundamentally flawed, and ignores that, in the context of requiring information to be presented, form and substance are flip sides of the same coin. As the *Thomas* court recognized, with regard to statutes requiring disclosures followed by informed consent, there is no meaningful distinction between form and substance—the whole purpose of requiring the disclosure to be in a stand-alone document is to call attention to it, to ensure the consumer understands precisely what they are agreeing to, and not to encumber the agreement that the employer may procure a consumer report with a bunch of other extraneous agreements or acknowledgments (i.e., that all of Hertz's hiring decisions are non-discriminatory, or that the

consumer has only five days to challenge the contents of the report.) Hertz's form defeated those goals, and its conduct deprived Plaintiffs of the right to receive a particular kind of information at a particular time. *Thomas*, slip op. at 10 ("[W]here a consumer alleges…that he or she has received a disclosure that does not satisfy [the FCRA's] requirements, the consumer has alleged a concrete informational injury.").

Both before and after *Spokeo*, numerous district courts have found Article III standing in cases like this, based on informational injury. *See Thomas*, slip op. at 24 ("[Plaintiff] has alleged a concrete informational injury: that is, [Plaintiff] has alleged that he was deprived of a clear disclosure stating that Defendants sought to procure a consumer report before the report was obtained").[3]  In all of these cases, the court found standing based on informational injury alone.

Hertz's disclosure violations also correspond with longstanding claims at common law. For instance, the common law often recognizes heightened disclosure requirements in the case of transactions between parties in a confidential or fiduciary relationship; transactions concerning the acquisition of insurance, surety, or a release from liability; transactions in which the parties have unequal access to information; and transactions concerning the transfer of real property, among others. *See* Kathryn Zeiler & Kimberly D. Krawiec, *Common-law Disclosure Duties and the Sin of Omission*, 91 Va. L. Rev. 1795–1882 (2005). Congress's decision to expand the circumstances in which heightened disclosures are required, or to allow the recovery of statutory damages in lieu of proving actual damages to the certainty required in litigation, does not negate the fact that courts have historically recognized disclosure violations as conferring cognizable injuries which can be

---

[3] *See Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp. 3d 810, 817-18 (E.D. Va. 2015) (holding plaintiffs had Article III standing in a case alleging a violation of § 1681b(b)(2), because defendant failed to provide plaintiff with the "kind of disclosure" that the FCRA "guarantees" before "procur[ing] a consumer report containing his information."); *Panzer v. Swiftships, LLC*, No. 2:15-cv-2257, ECF No. 27 at 11-12 (E.D. La. Oct. 23, 2015) (finding plaintiff had standing based upon informational injury when defendant failed to comply with § 1681b(b)(2)); *Ryals v. Strategic Screening Sols., Inc.*, 117 F. Supp. 3d 746, 753 (E.D. Va. 2015) (finding standing where, like here, the plaintiff alleged "that he did not receive the required information at the required time, as required by the FCRA"); *see also Lane v. Bayview Loan Servicing, LLC*, Case No. 15 C 10446, 2016 WL 3671467 (N.D. Ill., July 11, 2016) (denying *Spokeo* motion when plaintiff was deprived of information he was entitled to under the FDCPA).

remedied in federal courts. Congress's decision to update the law to account for new business practices does not break the "close relationship" that statutory claims have with traditional common-law duties, and it does not deprive Plaintiffs of standing.[4]

Whether Plaintiffs knew from Hertz's faulty disclosure that it would obtain his report is irrelevant for standing purposes so long as he suffered the type of injury the FCRA "was intended to guard against." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982); *see also Spokeo*, 136 S. Ct. at 1549-50. In order to ensure that prospective employees are adequately informed about their rights concerning these consumer reports, the FCRA's strict requirements provide that the disclosure be provided "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A). In other words, "[i]n Congress' legislative judgment, where the disclosure does not satisfy [the FCRA's] requirements, the consumer has been deprived of a fully appreciable disclosure to which he or she is entitled." *Thomas*, 2016 WL 3653878, at *10. Hertz therefore caused exactly the risk of harm "Congress has identified" in the statute. Further, the concerns of Congress were realized here. Receiving information buried among other text creates a risk that consumers will not be adequately informed of their rights by making it less likely that they will read and understand the importance and scope of the authorization they provide prospective employers to access personal, private information. In *Spokeo* the Court explicitly acknowledged that a risk of harm can be sufficient for standing purposes. 136 S. Ct. at 1549.

---

[4] In a last-ditch effort to save its motion, Hertz relies on an unreported out-of-circuit district court opinion, *Smith v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016). Def's Br. at 11. *Smith*, however, is unworthy of deference. *First*, the court issued its opinion without full briefing—a motion to dismiss was pending, and the court issued the opinion after receiving *Spokeo* in a notice of supplemental authority to which plaintiff was given no opportunity to respond. *See generally Smith* Docket. *Second*, *Smith* is simply unpersuasive. Its discussion of invasion of privacy is limited to a single sentence, and it does not discuss informational injury. *Smith* accomplishes little other than stating a conclusion without logic. This Court should therefore disregard *Smith* in favor of better-reasoned cases, such as *Thomas*, *In Re Nickelodeon*, *Manuel*, and *Panzer*. *See Perrill*, ECF No. 116 at 9 (rejecting *Smith*).

3. **Despite Hertz's Assertions, _Spokeo_ Did Not Address The Cause Of Action Asserted In This Case.**

Hertz strains to argue that disclosure requirement in this case was directly addressed by the Supreme Court, but that is simply not the case. Def's Br. at 10-11. Hertz repeatedly relies on a single passage from _Spokeo_—the Court's statement that "even if a consumer reporting agency fails to provide the required notice to a _user_ of the agency's consumer information, that information regardless may be entirely accurate." 136 S. Ct. at 1550 (emphasis added). Hertz attempts to confuse the Court by pretending like the notice referred to in this passage of _Spokeo_ is the same notice at issue in this case. In reality, it is totally different. The notice referred to in _Spokeo_ is mandated by § 1681e(d), and is a notice the consumer reporting agency is required to provide to its customers—in the parlance of the FCRA the "_users_" of the consumer reports. In this case, the _user_ would be Hertz. Of course, with regard to such a requirement, a _consumer's_ standing to sue could be questioned—the _consumer_ would be suing the consumer reporting agency for failing to notify the _user_ of its obligations. In such a circumstance, one can see how a consumer might be required to demonstrate harm stemming from the lack of notice to a third party. Yet, even in such an attenuated circumstance, the Court acknowledged standing could exist. Here, Plaintiffs are suing Hertz for procuring _their_ reports after failing to give _them_ notice to which _they_ had a statutory entitlement. Plaintiffs' claims stem directly from Hertz's acquisition of _their_ consumer report without obtaining _their_ informed consent. There is a vast difference between the example on which Hertz relies and the circumstances presented here. Despite Hertz's attempt to confuse the issue, the Supreme Court did not address, nor is the Supreme Court's example analogous to, a failure to provide a required notice directly to the consumer.

4. **Hertz Deprived Plaintiffs the Opportunity to Discuss the Contents of Their Report.**

Hertz's adverse actions against Plaintiffs before providing them with required notice caused informational injury that _Spokeo_ identified as sufficient for standing—the right to specific information at a specific time. When the required information is not provided, it constitutes a

concrete injury. *See, e.g., Thomas*, slip op. at 10-11.[5] As noted above, in *Spokeo*, the Court discussed several forms of injuries that satisfy concreteness. *See, e.g.*, 136 S. Ct. at 1549 (citing *Public Citizen*, 491 U.S. 440, 449 (1989) (standing based on DOJ's failure to provide access to information, based on Federal Advisory Committee Act, because inability to obtain such information "constitutes a sufficiently distinct injury to provide standing to sue"); *id.* at 1549 ("a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III") (quoting *Akins*, 524 U.S. 11, 20–25 (1998)). These cases illustrate that an informational injury is a concrete injury under Article III. *See* Cass R. Sunstein, *Informational Regulation and Informational Standing: Akins and Beyond*, 147 U. Penn. L. Rev. 613 (1999). Courts have little difficulty applying this principle to the FCRA. *Thomas*, slip op. at 7 ("By requiring that the consumer receive the [PAAN] before adverse action is taken, the statute provides the consumer with a right to review the report and discuss it with his putative or current employer before adverse action is taken against him. In sum, § 1681b(b)(3) also delineates substantive rights.") (citation omitted); *Panzer* at *5 ("[u]nder the FCRA, Plaintiff and other consumers have the right to specific information at specific times," and an "allegation that Defendants failed to provide that information is sufficient to show 'an invasion of a legally protected interest.'") (quoting *Lujan*, 504 U.S. at 560). Hertz does not meaningfully discuss or distinguish these cases.

Furthermore, the FCRA required Hertz to provide Plaintiffs with copies of their consumer report and a summary of their rights "*before* taking any adverse action based in whole or in part on the report." § 1681b(b)(3) (emphasis added). Under Supreme Court precedent expressly reaffirmed in *Spokeo*, 136 S. Ct. at 1549-50, Plaintiffs "suffer an 'injury in fact,'" when they are unable "to obtain information which must be publicly disclosed pursuant to [the FCRA]," *Akins*, 524 U.S. at 21. That is, the deprivation of information that Plaintiffs suffer "constitutes a

---

[5] Hertz's argument (at 15) that Plaintiffs have not suffered concrete harm based upon their pre-adverse action claims therefore turns on a fatally flawed premise: that its undisputed violation of § 1681b(b)(3) is a bare procedural violation of a notice requirement that caused no harm.

sufficiently distinct injury to provide standing to sue." *Public Citizen*, 491 U.S. at 449.

Through the FCRA, Congress sought to address employers' "increasing reliance on consumer reporting agencies to obtain information" about their prospective and current employees. *Dalton*, 257 F.3d at 414 (citing 116 Cong. Rec. 36570 (1970)). In particular, it was concerned that employers would use such information to "adversely affect[]" employees, who lacked any recourse to correct or even become aware of the consumer information. *Id.* Thus, Congress enacted Section 1681b(b)(3) to require that employers provide employees with pre-adverse action disclosures; "[t]he 'clear purpose' of this section is to afford employees time to 'discuss reports with employers or otherwise respond before adverse action is taken.'" *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) (quoting Lynne B. Barr, *The New FCRA: An Assessment of the First Year*, 54 Bus. Law. 1343, 1348 (1999)). And, as the FTC has explained, the pre-adverse action disclosures mandated by Section 1681b(b)(3) also serve an important educational purpose: without them, consumers may never know of their rights. *See* http://1.usa.gov/1NS1Cbv. As the Supreme Court in *Spokeo* made clear, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements," its "judgment" is both "instructive and important." 136 S. Ct. at 1549. This Court should respect Congress's considered judgment and conclude that Plaintiffs (and, by extension, all class members who did not receive pre-adverse-action notice) have standing on their Section 1681b(b)(3) claims.

Here, Hertz took adverse action against Plaintiffs before informing them what was in their reports, or notifying them of their rights under the FCRA. Hertz thus failed to provide Plaintiffs the type of information the statute required it to disclose, at the time the statute required it to be disclosed. Even though Plaintiffs had provided Hertz with some information about their backgrounds, they were denied employment without the benefit of knowing exactly what Sterling had reported to Hertz about them and served as the basis for Hertz's refusal to hire them, and before they were informed of their rights. This is precisely the situation the FCRA was designed to avoid.

Hertz's argument that the accuracy of the consumer report precludes harm misconstrues the text and purpose of the FCRA and the nature of the standing analysis. Congress intended that the reports allow Plaintiffs to be "confronted with the charges against [them] and tell [their] side of the story." *Thomas*, 2016 WL 3661960, at *12 (quoting Senate Report at 3). Even if Plaintiffs' "consumer reports were entirely correct[,]" they still "were deprived of the opportunity to explain any negative records . . . and discuss the issues raised in their reports with [Hertz] before suffering adverse employment action." *Id.*

Hertz's contention that Plaintiffs had an opportunity to communicate with it about their criminal records before receiving written notice of the adverse action is also of no moment. Section 1681b(b)(3) was not written solely to guarantee consumers the ability to communicate with employers about their criminal backgrounds; it was written to ensure that consumers had the ability to communicate with potential employers about the contents of their reports before adverse action is taken against them based on those reports. It was also written to ensure that consumers know their rights before engaging in such communications. This is a meaningful distinction: with the FCRA, Congress established a clear and purposeful order of operations: after an employer obtains a report, if it intends to take adverse action based on that report, it must provide the consumer with a copy of the report, and notice of their rights. The consumer, *armed with that full knowledge*, then has a reasonable amount of time to respond, before any adverse action can be taken.[6]

---

[6] Adopting any conclusion other than that the plaintiffs have standing would have far-reaching implications, not only for the FCRA, but for numerous other statutes that seek to protect consumers by requiring disclosures and allowing the recovery of statutory damages for failure to comply. The Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, (TILA) and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, (RESPA) are only two consumer-protection statutes that would be gutted if *Spokeo* were misinterpreted as undermining standing based on informational injury. *See, e.g.*, 15 U.S.C. § 1638 (requiring disclosures under TILA); 15 U.S.C. § 1640(a)(2)(B) (allowing for statutory damages for failure to comply with TILA); 12 U.S.C. § 2605(c) (requiring disclosures under RESPA in certain circumstances); 12 U.S.C. § 2605(f)(1)(B) (allowing recovery of statutory damages for noncompliance with RESPA). If consumers are no longer permitted to seek redress when defendants fail to comply with statutorily mandated disclosure requirements, the failure to with those requirements, and the attendant abuses, will not be far behind.

Moreover, it is simply not accurate for Hertz to masquerade as though the conversations Plaintiffs had with Hertz about their employment prospects were unaffected by the fact that Plaintiffs had not been provided with copies of their reports. Plaintiff Lee was not even aware of the nature of the adverse information reported in his background check until days after Hertz refused to hire him. Plaintiff Campbell, without knowing that her probationary status was reflected on her report, had no ability to communicate to Hertz the fact that her probation officer would support her probation being terminated in order to allow her employment prospects to improve.

Numerous courts have found Article III standing in circumstances where a defendant has failed to provide required information, even in the absence of any allegation of consequential harm. *See, e.g.*, *Thomas*, slip op. at 11; *Prindel v. Carrington Mortgage*, 3:13-cv-1349, ECF No. 133 at 25 ("reading . . . *Spokeo* as requiring allegations of a separate, additional concrete harm whenever Congress has created a new legal right that previously was insufficient at law would put the majority opinion at odds with both *Havens* and itself."); *Perrill*, ECF No. 116 at 9 ("*Spokeo* does not require a plaintiff to allege actual damages.").

5. **In The Alternative, Remand, Not Dismissal, Is Mandatory.**

If the Court decides that there is no jurisdiction, this action must be remanded to state court, where it was originally filed, not dismissed. 28 U.S.C.A. § 1447(c). Section 1447(c) states that "If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded." This command is mandatory. *See Polo v. Innoventions Int'l, LLC*, No. 14-55916, at 7 (9th Cir., Aug. 18, 2016) ("[T]he district court . . . *must* remand the case to state court, rather than dismiss it. . . . State courts are not bound by the constraints of Article III." (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) (emphasis in original)).

**CONCLUSION**

For the foregoing reasons, Hertz's motion for judgment on the pleadings should be denied because Plaintiffs have suffered injuries sufficient to support Article III standing after *Spokeo*.

BERGER & MONTAGUE, P.C.

Dated: September 8, 2016          By: /s/ E. Michelle Drake
                                      E. Michelle Drake
                                  E. Michelle Drake, MN Bar No. 0387366*
                                  emdrake@bm.net
                                  Joseph C. Hashmall, MN Bar No. 392610*
                                  jhashmall@bm.net
                                  43 S.E. Main Street, Suite 505
                                  Minneapolis, MN 55402
                                  Phone: (612) 594-5999
                                  Fax: (612) 584-4470
                                  *admitted pro hac vice

                                  Jahan C. Sagafi (SBN 224887)
                                  jsagafi@outtengolden.com
                                  Katrina L. Eiland (SBN 275701)
                                  keiland@outtengolden.com
                                  **OUTTEN & GOLDEN LLP**
                                  One Embarcadero Center, 38th Floor
                                  San Francisco, CA 94111
                                  Telephone:  (415) 638-8800
                                  Facsimile:  (415) 638-8810

                                  Meredith Desautels (SBN 259725)
                                  mdesautels@lccr.com
                                  Elisa Della-Piana (SBN 226462)
                                  edellapiana@lccr.com
                                  **LAWYERS' COMMITTEE FOR CIVIL RIGHTS
                                  OF THE SAN FRANCISCO BAY AREA**
                                  131 Steuart Street, Suite 400
                                  San Francisco, CA 94105
                                  Telephone:  (415) 543-9444
                                  Facsimile:  (415) 543-0296

                                  Matthew C. Helland (SBN 250451)
                                  helland@nka.com
                                  **NICHOLS KASTER, LLP**
                                  One Embarcadero Center, Suite 720
                                  San Francisco, CA 94111
                                  Telephone: (415) 277-7235
                                  Facsimile: (415) 277-7238

                                  *Attorneys for Plaintiffs and proposed Class Members*

PLAINTIFFS' RESPONSE DEFENDANTS' MOTION DISMISS 1ST AMEND COMPLAINT
                                                    Case No.:5:15-cv-4562-BLF