# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| PETER LEE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>THE HERTZ CORPORATION, et al.,<br><br>    Defendants. | Case No. 15-cv-04562-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS AND REMANDING CASE TO SAN FRANCISCO COUNTY SUPERIOR COURT**<br><br>[Re: ECF 47] |

Plaintiffs Peter Lee and Latonya Campbell (collectively, "Plaintiffs") filed a First Amended Complaint ("FAC") on behalf of themselves and similarly situated persons against Defendants The Hertz Corporation and Dollar Thrifty Automotive Group, Inc. (collectively, "Hertz"[1]), alleging that Hertz violated two procedural requirements of the Fair Credit Reporting Act ("FCRA") with respect to their applications for employment. First, Plaintiffs allege that the employment application forms Hertz used in the course of its hiring process violated the "stand-alone requirement" of the FCRA, 15 U.S.C. § 1681b(b)(2)(A)(i). Second, Plaintiffs allege that by withdrawing their conditional offers of employment without first providing them with a copy of their consumer reports and a summary of their rights to contest its accuracy, Hertz failed to comply with sections 1681b(b)(3)(A)(i) and (ii) of the FCRA. Hertz now moves under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) to dismiss this case in its entirety for lack of subject matter jurisdiction, based on the U.S. Supreme Court's recent decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016). Mot., ECF 77. For the reasons set forth below, the Court GRANTS Defendant's motion and remands the case to the San Francisco County Superior Court.

---

[1] Dollar Thrifty Automotive Group, Inc. is wholly owned and operated by The Hertz Corporation. FAC ¶ 21.

## I. BACKGROUND

Hertz routinely obtains information contained in consumer reports to conduct background checks on prospective employees, and uses the information in the reports as the basis for adverse employment action against such persons, such as refusing to hire them or withdrawing conditional offers of employment. FAC ¶ 2, ECF 43. Plaintiffs allege that the disclosures relating to these background checks violated the FCRA's stand-alone requirement because they failed to provide "a clear and conspicuous disclosure made in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes." FAC ¶ 117. Plaintiffs also allege that Hertz's failure to provide Plaintiffs with a copy of his or her consumer report, a reasonable amount of time to respond prior to taking adverse employment actions, and a summary of their rights under the FCRA, violates the FCRA's pre-adverse action notice requirement. *Id.* ¶ 112, 113. Plaintiffs do not allege that the contents of the reports were inaccurate nor do they allege that they were confused by the disclosure notice regarding consent to procure a consumer report.

### A. Allegations Relevant to Plaintiff Peter Lee

Plaintiff Lee applied to work for Hertz's Dollar/Thrifty-branded car rental location at the San Francisco International Airport in May 2014. *Id.* ¶ 30. During the hiring process, he used Hertz's online application form (the "Online Job Application") to apply for employment with Hertz. *Id.* ¶ 33; Ex. A to Mot., ECF 47-1. The Online Job Application contained a section disclosing Hertz's intention to run a criminal background check. FAC ¶ 35. Hertz reviewed the application and conditionally offered Lee a position at the company. *Id.* ¶ 38. Nearly two weeks later, Hertz asked Lee to fill out an addendum to the application form, which required him to authorize Hertz to procure a consumer report on him. *Id.* ¶¶ 41, 42; Ex. B to Mot., ECF 47-1. While the consumer report was pending, Hertz informed Lee that he would begin work on June 9, 2014, at which point Lee provided a notice of resignation to his then-current employer. FAC ¶ 44.

At some point between the time Hertz informed Lee of his start date and June 3, 2014, Hertz obtained one or more consumer reports from its third-party consumer reporting agency, Sterling InfoSytems, Inc. ("Sterling"). *Id.* ¶ 45; Ex. C to Mot., ECF 47-1 ("Sterling Form"). The

consumer report contained information about Lee's background, including information about pending criminal charges for which he had not been convicted. FAC ¶ 45. On June 3, 2014, Hertz informed Lee that, based on company policy, it would not hire him because of the information contained in his background check. *Id.* ¶¶ 47, 49. Lee asked Hertz for a copy of his background check and he was instructed to contact Sterling, which he did. *Id.* ¶¶ 48, 51. Lee alleges that Sterling sent him a copy of his consumer report sometime on or after June 3, 2014, and that he did not receive this copy until sometime after that date. *Id.* ¶ 52. Lee also alleges that sometime on or after June 4, 2014, Sterling sent him, by regular mail, an undated letter titled "Pre-Adverse Action Notice," which bore the Hertz's corporate logo. *Id.* ¶ 53. Enclosed with this letter was a copy of the consumer report prepared by Sterling dated June 4, 2014. *Id.*

### B. Allegations Relevant to Plaintiff Latonya Campbell

Plaintiff Campbell had a similar experience. Campbell applied to work for a counter sales position at the Dollar/Thrifty-branded car rental location owned by Hertz in San Francisco in late-April 2014. *Id.* ¶ 59. Campbell filled out the same Online Job Application as did Lee. *Id.* ¶¶ 59–63; Ex. D to Mot., ECF 47-1. As with Lee, Hertz extended a conditional offer of employment to Campbell pending a criminal background check. FAC ¶ 66. Upon receiving this conditional offer, Campbell declined a second interview with another company because she preferred the job with Hertz. *Id.* ¶ 67. Shortly thereafter, Campbell also filled out the Sterling background check disclosure and authorization form. *Id.* ¶ 68; Ex. E to Mot., ECF 47-1.

Campbell's background report contained information regarding a misdemeanor conviction related to domestic violence for which she was sentenced to three years of probation. FAC ¶ 70. After confirming a start date with Campbell, Hertz informed her that company policy prohibited the hiring of an individual with a criminal conviction involving violence. *Id.* ¶ 73. Campbell attempted to explain the situation in which this conviction arose, and Hertz's representative instructed her to send Hertz evidence supporting her status as a victim of domestic violence, which she did. *Id.* ¶¶ 74, 75. Hertz then revoked Campbell's conditional job offer. *Id.* ¶¶ 76–78. Sometime after Hertz rescinded her job offer, Campbell received a package, including a copy of the consumer report Hertz procured, in the mail. *Id.* ¶ 79.

### C. Procedural History

Plaintiffs initially filed this putative class action in California Superior Court, County of San Francisco, which Defendants then removed to this Court. *See generally* Notice of Removal & Ex. A, ECF 1, 1-1. Thereafter, Hertz filed a motion to stay the action pending the Supreme Court's issuance of its decision in *Spokeo*. ECF 13. The Court granted Hertz's motion to stay over Plaintiffs' objections. ECF 35. After the Supreme Court decided *Spokeo*, Plaintiffs filed the operative complaint on behalf of themselves and all other similarly situated persons. To address the Supreme Court's decision in *Spokeo*, Plaintiffs advance two theories of standing: (1) invasion of privacy and (2) informational injury.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. Under Article III of the U.S. Constitution, the Court has subject matter jurisdiction only if the party bringing the action has standing, an inquiry that addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citation omitted). When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff, as the party seeking to invoke the court's jurisdiction by filing the complaint, bears the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may attack the court's jurisdiction as it appears on the face of the complaint or by presenting affidavits and other evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). For a facial attack, the court must "accept all allegations in the complaint as true and construe them in the light most favorable to the plaintiff[ ]." *Id.*

### B. *Spokeo* and Standing

In *Spokeo*, the Supreme Court reaffirmed that to have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." 136 S. Ct. at 1547 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Here, it is undisputed that

4

the alleged statutory violations are traceable to Hertz's conduct, and that the alleged violations are redressable by statutory damages. Accordingly, the remainder of the discussion on the standing issue is addressed solely to the requirement of injury in fact.

To establish injury in fact, a plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Id.* (citing *Lujan*, 504 U.S. at 560 n.1). Here, it is undisputed that Plaintiffs have alleged a particularized injury.

The Supreme Court in *Spokeo* distilled several "general principles" from its prior cases with respect to concreteness. *Id.* at 1549–50. A concrete injury is one that is "'real,' and not 'abstract.'" *Id.* at 1548 (citation omitted). Tangible injuries plainly satisfy this requirement. *Id.* at 1549. Nevertheless, intangible injuries may also be concrete. *Id.* In evaluating whether an intangible injury satisfies the "concreteness" requirement, the *Spokeo* Court identified two important considerations (1) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" and (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

The Supreme Court then elaborated on the connection between statutory standing and concrete injury. First, the Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation[.]" *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). Therefore, "[a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

At the same time, the Court observed, in cases where "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* (citing *FEC v. Akins*, 524 U.S. 11, 20–25 (1998); *Pub. Citizen v. Dep't of Justice*,

5

1  491 U.S. 440, 449 (1989)).  The Supreme Court noted that although one of the FCRA's purposes is to protect against inaccurate credit reporting, "not all inaccuracies cause harm or present any risk of harm."  *Id.* at 1550.

### C. The FCRA

As relevant here, the FCRA provides that the employer must, in advance, provide the consumer with a clear and conspicuous written disclosure, and obtain the consumer's consent to obtain a consumer report:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

§ 1681b(b)(2).  The consumer is also provided the right to review and discuss the content of a report with the prospective employer, before adverse action is taken against him or her based on the report:

> In using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under Section 1681g(c)(3) of this title.

§ 1681b(b)(3).  The purpose of this and other provisions of the FCRA is to ensure fair and accurate credit reporting, protect consumer privacy, and promote efficiency in the banking system.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); 15 U.S.C. § 1681 (congressional findings and statement of purpose).

### III. DISCUSSION

Plaintiffs bring this claim for improper disclosure under section 1681b(b)(2) and for Hertz's failure to provide a copy of the report, and allow them an opportunity to review and discuss its content with Hertz before adverse action was taken against them in violation of section 1681b(b)(3).  Hertz argues that Plaintiffs have no standing to pursue this claim because they seek

statutory damages based solely on Hertz's bare procedural violation of the FCRA, divorced from any concrete harm. Mot. 1. Plaintiffs respond that *Spokeo* did not alter constitutional requirements for standing, and that they have alleged two concrete injuries: violation of the right to privacy and informational injuries. Opp'n 1, ECF 50; FAC ¶¶ 92–96. Because the injuries claimed are different as to each cause of action asserted against Hertz, the Court addresses each cause of action below.

### A. Count II—Improper Disclosure

Count II, for improper disclosure, is based on section 1681b(b)(2), which forbids a person from procuring a consumer report without obtaining the consumer's express written consent in advance. Under the statute, the consumer's consent must be made on a single document that contains only required information that is "clear and conspicuous." Plaintiffs claim that Hertz violated section 1681b(b)(2) by giving them two documents—the Online Job Application and Sterling Form—that contained extraneous information in addition to the required disclosures.

#### i. Right to Privacy

Plaintiffs allege that Hertz invaded their right to privacy by procuring their background reports without complying with the FCRA's stand-alone disclosure requirement. FAC ¶ 94. Hertz argues that Plaintiffs did not suffer an invasion of privacy because they knew that Hertz would procure a background check, and consented to the procurement of this report by voluntarily signing or electronically accepting multiple authorizations.[2] Mot. 12. Citing *Thomas v. FTS USA, LLC*, No. 13-cv-825, 2016 WL 3653878 (E.D. Va. June 30, 2016), Plaintiffs contend that their signed authorization for Hertz to procure his background report was not "informed," and thus, it was "illegal" for Hertz to obtain their consumer reports for employment purposes. Opp'n 11; *see id.* at 1, 9, 18, 21. Therefore, Plaintiffs' position is that Hertz's procurement of the background report in violation of the FCRA was an invasion of privacy. *Id.* at 11.

---

[2] Hertz also argues that Plaintiffs do not allege that the information obtained for the background report was private. Mot. 12. Plaintiffs contend that it is irrelevant that some of the information comes from public sources, because the act of consolidating it and providing it to a potential employer implicates privacy concerns. Opp'n 9–10. Because the Court agrees that Plaintiffs consented to the background check, it declines to address this issue.

7

In reply, Hertz correctly distinguishes *Thomas* from the case at hand. Reply ISO Mot. 10–11, ECF 53. In *Thomas,* the plaintiff alleged that his former employer procured his and other class members' consumer reports without first providing the required written disclosure or obtaining the consumers' written consent, as required by the FCRA. 2016 WL 3653878, at *1. The plaintiff later learned that his employer had received his consumer report when he was denied continued employment based upon the inaccurate information contained in the report. *Id.* at *3. Here, in contrast, Plaintiffs do not allege that the disclosures they received prevented them from understanding that they were authorizing Hertz to procure a background report or that they would not have authorized Hertz to a background report had they received a FCRA-compliant disclosure. *See* Reply ISO Mot. 10; *cf. Feist v. Petco Animal Supplies, Inc.*, No. 16-cv-1369, 2016 WL 6902549, at *2 (N.D. Cal. Nov. 22, 2016) ("Here, Plaintiffs have plausibly alleged that they may have been confused or distracted by the length of the Consent Form."). Indeed, Plaintiffs have not proffered such an allegation nor is there any indication that Plaintiffs could plausibly allege those facts. Instead, the crux of Plaintiffs' complaint is that the consent form did not technically comply with the requirements of the FCRA. This is the kind of bare procedural violation that the Supreme Court described in *Spokeo* as insufficient. *See, e.g.*, *Nokchan v. Lyft, Inc.*, No. 15-cv-3008, 2016 WL 5815287, at *4 (N.D. Cal. Oct. 5, 2016); *Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-cv-4684, 2016 WL 4577257, at *4–5 (N.D. Cal. Sept. 2, 2016).

### ii. Informational Injury

Plaintiffs' alleged informational injury is also based on the consent form containing extraneous information. In support of their informational injury claim, Plaintiffs relies on *Public Citizen*, 491 U.S. 440, and *Akins*, 524 U.S. 11. FAC ¶ 95. Both of these cases were cited by the Supreme Court in *Spokeo* as examples of a concrete harm being suffered when information authorized by statute was not supplied. In *Public Citizen*, the harm was the inability of the plaintiff to monitor the judiciary because the ABA refused to release documents that congressional statutes made open records. In *Akins*, the harm was an inability to obtain information regarding the American Israel Public Affairs Committee's membership, contributions, and expenditures that the plaintiffs believed were required by law.

1  Hertz attempts to distinguish *Akins* and *Public Citizen* by arguing that both cases involved
2  challenges to the government's failure to comply with a statutory obligation to disclose
3  information of public concern.³  Mot. 13–15.  Plaintiffs reject this interpretation, and instead
4  suggest that both cases support standing here because in *Akins* and *Public Citizen*, the Supreme
5  Court rejected the idea that plaintiffs who were deprived of information they were entitled to
6  receive had to demonstrate an additional injury—the deprivation of information itself sufficed to
7  constitute the required injury for purposes of Article III.  Opp'n 14–15.  In reply, Hertz again
8  emphasizes that *Akins* and *Public Citizen* involved government records.  Reply ISO Mot. 14–15.
9  Hertz also attempts to distinguish the cases Plaintiffs cite, because in those cases, the plaintiffs
10 were actually deprived of information to which they were legally entitled whereas here, Plaintiffs
11 were provided with the information required by the FCRA, albeit along with other alleged
12 extraneous information.  Reply ISO Mot. 15–16; *see, e.g.*, *Havens Realty Corp. v. Coleman*, 455
13 U.S. 363 (1982) (plaintiff was deprived of information to which she was legally entitled); *Church
14 v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (same).

15 The Court agrees that the deprivation of statutorily mandated information can cause an
16 intangible but concrete harm, if that harm is of the type Congress sought to prevent.  Plaintiffs,
17 however, have not alleged that Hertz's disclosure form did not contain the information required by
18 the FCRA.  *Cf. Akins*, 524 U.S. at 21 ("[A] plaintiff suffers an 'injury in fact' when the plaintiff
19 fails to obtain information which must be publicly disclosed pursuant to a statute." (citing *Pub.
20 Citizen*, 491 U.S. at 449)).  Instead, Plaintiffs claim that the disclosure was not in the format
21 required by the statute because it contained "extraneous" information.  Absent some additional
22 allegation of harm, the Court cannot find an informational injury based on the current record.

23 **B.  Count I—Adverse Action**
24 Count I, the adverse action claim, is based on section 1681b(b)(3), which provides a
25 consumer the right to receive a copy of the report, and review and discuss its content with the

---

³ Hertz also attempts to draw a distinction based on the purported importance of the rights at issue in *Akins* and *Public Citizen*.  Mot. 15. However, such a determination is not essential to this motion, so the Court declines to make this distinction.

prospective employer, before the adverse action is taken against him or her based on the report. Plaintiffs allege that Hertz rescinded their conditional offers of employment without giving them notice and the opportunity to discuss the content of the report with Hertz. FAC ¶ 96. Hertz first argues that the Supreme Court addressed this precise issue in *Spokeo* when it cited as an example of a violation of one of the FCRA's procedural requirements that may result in no harm, a situation in which a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, but the information provided is accurate. Mot. 11 n.7; 136 S. Ct. at 1550. Hertz also contends that the violation of the FCRA is merely technical, inasmuch as Plaintiffs do not claim the information contained in the reports was inaccurate, and they therefore lack standing to pursue the adverse action claim. Mot. 15–16.

Plaintiffs, however, argue that *Spokeo* did not address the cause of action asserted in this case and that Hertz deprived them the opportunity to discuss the contents of their reports. Opp'n 21–25. As to the former, Plaintiffs contend that the notice referred to in the portion of *Spokeo* cited by Defendants relates to a different section of the FCRA—section 1681e(d), which requires the consumer reporting agency to provide notice to its customers—and is therefore irrelevant. Opp'n 21. As to the latter, Plaintiffs assert that the FCRA gives them the right to specific information at a specific time, and Hertz's failure to provide the required information at the proper time constitutes a concrete injury. *Id.* at 21–22. Citing to some of the legislative history, Plaintiffs state that Congress enacted section 1681b(b)(3) to require employers to provide employees with pre-adverse action disclosures so they may correct or become aware of the consumer information. *Id.* at 23. Here, however, Hertz took adverse action—*i.e.*, revocation of the conditional offers—before informing Plaintiffs what was in their reports or notifying them of their rights under the FCRA. *Id.*

In reply, Hertz correctly reiterates that Plaintiffs' did not suffer any concrete harm by Hertz's late procurement of pre-adverse action packages. Reply 17. In the complaint, Plaintiffs concede that they communicated with Hertz regarding the contents of their criminal background reports, and Campbell was even given an opportunity to provide written evidence on her own behalf. Moreover, neither Plaintiff alleges that the information on which Hertz relied was

inaccurate or that timely receipt of pre-adverse action packages would have allowed them to successfully contest Hertz's decision. Although the Court notes that Campbell's probation officer stated in her letter to Hertz that she would have attempted to terminate Campbell's probation early and expunge her record, Campbell does not allege that Hertz would have or had any obligation to hold the position open for Campbell to do so.

The Court also agrees that the *Spokeo* Court addressed this very issue by providing the example discussed above. *See* 136 S. Ct. at 1550. Again, neither Lee nor Campbell contest the accuracy of the information cited in their criminal background reports. Rather, they simply allege that the information was "not relevant" to the positions for which Plaintiffs applied. FAC ¶¶ 58, 80. Thus, it appears that Plaintiffs seek to dispute how Hertz treats accurate information, rather than the lack of an opportunity to timely correct inaccurate information. *See Dutta v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-4292, 2016 WL 6524390, at *3 (N.D. Cal. Nov. 3, 2016). This is not what the FCRA protects. *See Spokeo*, 136 S. Ct. at 1550 ("Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk.").

## IV. ORDER

In light of the foregoing, the Court concludes that under *Spokeo* and the facts of this case, Plaintiffs have failed to establish that they meet Article III's injury-in-fact requirement, and the motion to dismiss is GRANTED. Accordingly, the case is remanded to the San Francisco Superior Court.

**IT IS SO ORDERED**

Dated: December 2, 2016

BETH LABSON FREEMAN
United States District Judge